50 Wn.2d 653 (1957)
314 P.2d 423
In the Matter of the Welfare of THREE MINORS.
THE STATE OF WASHINGTON, on the Relation of Barbara Johnson, Plaintiff,
v.
WARNER POYHONEN, as Judge of the Superior Court for Thurston County, Respondent.[1]
No. 34174.
The Supreme Court of Washington, Department Two.
August 1, 1957.
O'Leary, Meyer & O'Leary, for relator.
Hewitt A. Henry, for respondent.
*654 DONWORTH, J.
This matter is before the court pursuant to a writ of certiorari to review an order entered January 31, 1957, by the respondent, as visiting judge of the superior court for Thurston county, juvenile department, by which the relator was permanently and absolutely deprived of the custody of her three minor children. The children were declared to be dependent children and made wards of the court, which further made the children available for adoption by suitable persons with the consent of the probation officer and the approval of the court.
The record reveals a petition filed September 2, 1955, by the probation officer of Thurston county, alleging the children to be dependent on the grounds that "the said minor children are destitute of a suitable home and are in danger of being brought up to lead ... dissolute and immoral" lives. The children were taken into custody in compliance with an emergency order of the court and temporarily placed with a suitable family pending further order. A hearing was had on September 19, 1955, before one of the judges of the superior court for Thurston county, at which time the relator appeared in person and by counsel. Evidence was taken, but the hearing was not concluded and was, therefore, continued. Some months later, the matter was set for hearing before the respondent judge on June 19, 1956, at which time it was stipulated between all parties that the testimony taken at the former hearing (which had been reduced to writing) would be considered in addition to that taken at that time. At the close of the testimony, respondent rendered his oral decision. Findings of fact and conclusions of law were thereafter drawn and filed on January 31, 1957.
Two findings of fact are challenged by relator. They are:
I. "That ... [relator] is not a fit and proper person to have care, custody, or control of the three children still living; ..." and
II. "That ... [the three children named] are dependent children within the meaning of the laws of the State of Washington in that (1) they have no parent willing to exercise, or capable of exercising, proper parental *655 control; (2) their home by reason of neglect and depravity of their parents is an unfit place for children; (3) their parents do not properly provide for said children; (4) they are in danger of being brought up to lead idle, dissolute and immoral lives."
The first finding quoted relates solely to the fitness of relator to have present and future custody of the children, whereas the second declares the dependency status of the children under four applicable subdivisions of RCW 13.04.010 (Rem. Rev. Stat., § 1987-1), which defines "dependent child" as
"... any child under the age of eighteen years:
"(5) Who has no parent or guardian; or who has no parent or guardian willing to exercise, or capable of exercising, proper parental control; or ...
"(7) Whose home by reason of neglect, cruelty or depravity of its parents or either of them, or on the part of its guardian, or on the part of the person in whose custody or care it may be, or for any other reason, is an unfit place for such child; or ...
"(13) Whose father, mother, guardian or custodian is an habitual drunkard, or do not properly provide for such child, and it appears that such child is destitute of a suitable home or of adequate means of obtaining an honest living, or who is in danger of being brought up to lead an idle, dissolute or immoral life; or where such child is without proper means of support; or ...
"(16) Who from any cause is in danger of growing up to lead an idle, dissolute or immoral life; or ..."
It would serve no useful purpose to repeat here in detail the evidence adduced concerning the course of conduct indulged in by relator during the five years immediately preceding the hearing of this matter. However, the nature of the findings and the seriousness of the final order require a brief review of the basic facts found by the trial court.
The evidence shows that relator married in 1949. The following year a daughter was born of the marriage. Shortly thereafter, the marriage ended in divorce. Relator was awarded the custody of her infant daughter.
Subsequent to her divorce, three illegitimate children were born to relator. Two of these children, born in October, *656 1951, and June, 1955, respectively, were conceived as the result of adulterous relations with her former husband, who had remarried two days after his divorce from relator. The child born in June, 1955, died unexpectedly as a result of pneumonia at the approximate age of two months. The third illegitimate child was born in March, 1953, the product of relator's relations with a man with whom, as relator testified, she had planned marriage.
The record shows that relator depended almost entirely upon the contributions of the department of public assistance for the support of herself and her children; that the total of these payments over the period from 1951 until the termination of her eligibility in October, 1955, was in excess of five thousand dollars. The record fails to reveal that relator made any effort whatever to obtain employment subsequent to her divorce until after the children here involved were removed from her custody in September, 1955. Nor did she attempt to compel her former husband to contribute to the support of any of the three children sired by him.
In our consideration of this case, we are acutely aware of the observation contained in the following excerpt from the case of In re Sickles, 42 Wn. (2d) 17, 19, 252 P. (2d) 1063 (1953), which we deem particularly appropriate to the case at bar. There, we said:
"This case presents the usual difficult problem which confronts this court when we are asked to reverse or modify an order of a trial court affecting the welfare of a minor child. The court is necessarily vested with a wide latitude of discretion. The court must be guided by the evidence submitted at the hearing, and the trial judge is in a much better position to determine a question of child welfare than we are when reviewing the printed record. In view of such a situation, we must rely very much upon the findings of fact made by the court."
It must likewise be observed that child dependency within the purview of subdivisions (5), (7), and (13) of RCW 13.04.010, above quoted, arises not out of any conduct or misconduct of the child, but upon various named deficiencies *657 of the parent, parents, or guardian in providing for the proper care, maintenance and support of the minor child. Simply stated, child dependency under these subsections of the statute is based primarily upon parental delinquency. Hence, the same evidence which establishes the delinquency or lack of fitness of the parent, establishes the dependency of the child.
On the other hand, child dependency within the meaning of RCW 13.04.010(16) need not be based upon parental deficiency or delinquency, but may arise from extrinsic sources. In the latter case, the evidence establishing child dependency may be wholly unrelated to the fitness of the parent to assume his responsibility and perform his corresponding duties.
The several subdivisions of RCW 13.04.010 are, by their express language, set out in the disjunctive. Therefore, a finding that any one of these conditions (enumerated in the several subsections of the statute) exists with reference to a particular child is sufficient to warrant the court in entering an order declaring the dependency of such child within the meaning of the statute.
[1] Relator first challenges the sufficiency of the evidence to establish the dependency of the children here involved. It is contended that the portion of the above quoted finding of fact, which states "They [the children here involved] have no parent willing to exercise, or capable of exercising proper parental control," is without evidentiary support. We cannot agree with this contention. Although relator testified as to her willingness and desire to be reunited with her children, the evidence as a whole supports the view of the trial court that relator's past conduct was inconsistent with her expressed willingness to exercise "proper" parental control. Likewise, the evidence concerning relator's course of conduct prior to the hearing tends to negate her ability to exercise proper parental control.
[2] Our attention is next directed to the omission of the word "cruelty" in the second subdivision of the finding of fact which would establish the dependency of these children *658 within subsection (7) of the definitive statute. Here again, it must be noted that the conduct of the parent, whether it be neglect, cruelty or depravity, is described in the statute in the disjunctive. Hence, a concurrence of the stated conditions is not essential to the operative effect of that specific subsection.
Without further reference to the facts, we consider it sufficient to state that we have examined the record with care, and cannot say that the evidence preponderates against either of the above quoted findings of fact assigned as error. Hence, they will not be disturbed.
Relator assigns error to certain conclusions of law which provide:
(1) "That [relator named] should be deprived, absolutely and permanently, of all maternal rights in, to, and over [the named children]; ..." and
(2) "That [the named children] should be made wards of this Court; that the probation officer of this Court should be directed and authorized to make arrangements for their care, support and maintenance, under his supervision and that of this Court; that said minors should be made available for adoption by suitable adoptive parents, and the probation officer, with the approval of this Court, authorized to consent to their adoption by proper persons."
It is asserted that neither the evidence nor the findings of fact as made justify these conclusions.
[3] Once having determined by contemporaneous findings of fact that the children are dependent children within the scope of RCW 13.04.010, and that the natural parent or guardian is an unfit person to be entrusted with their continued custody, it becomes incumbent upon the juvenile court to enter such order, or orders, either permanent or temporary, as in the exercise of its sound discretion it deems appropriate to the situation presented. RCW 13.04.100, Rem. Rev. Stat., § 1897-8.
In view of the seriousness of the conclusions of law assigned as error and the finality of the disposition of the children made by the order entered pursuant thereto, we have attentively reviewed all cases cited by relator, particularly the Sickles case, supra, and In re Miller, 40 Wn. *659 (2d) 319, 242 P. (2d) 1016. Both cases involved physical cruelty by one parent against his or her minor children with possible condonation or acquiescence by the other parent. We fail to find in those cases a similarity to the facts of the present case which supports the relator in her contentions herein.
[4] The trial court, being mindful that the welfare of the childen here involved was the paramount factor, determined that relator's conduct rendered her unfit for parenthood, and that the children's wellbeing would best be served by permanently removing them from her influence and control and placing them in a position which would, in its opinion, afford them an opportunity for normal development. After considering all the factors involved, we cannot say that the court abused its discretion in so doing.
With respect to the permanency of the order under review, it is significant to note that more than nine months transpired between the time relator's children were removed from her custody and the time of the final hearing. The court, in entering its conclusions of law and final order, had the benefit of that time lapse in considering whether relator had, during that interval, made any noticeable effort to improve herself or the manner in which she lived. The trial court, in entering its memorandum opinion, was not favorably impressed with her conduct during that period. Nor are we.
The order entered January 31, 1957, is in all respects affirmed.
HILL, C.J., SCHWELLENBACH, ROSELLINI, and FOSTER, JJ., concur.
NOTES
[1] Reported in 314 P. (2d) 423.